IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02076–MSK–KMT

CROWN ENERGY, INC., a Colorado corporation,

     Plaintiff,

v.

OCS AMERICAN CAPITAL, LTD., a New Mexico limited liability company,

     Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on Defendant OCS American Capital, Ltd.'s ("OCS") "Motion to Dismiss."  (Doc. No. 11, filed Oct. 10, 2013.)  Plaintiff Crown Energy, Inc.'s ("Crown") Response was filed on November 4, 2013 (Doc. No. 14) and OCS's Reply was filed on November 12, 2013 (Doc. No. 20).  For the following reasons, OCS's Motion to Dismiss is GRANTED in part and DENIED in part.

### FACTUAL BACKGROUND

     The following factual background is derived from Crown's Complaint and Demand for Jury (Doc. No. 1, filed Aug. 5, 2013) and the parties' briefing with respect to this Recommendation.

In summer 2011, PetroGas Energy Services, LLC ("PetroGas"), a non-party Colorado company in the business of exploring for, developing, and producing oil and natural gas, contacted OCS to obtain financing to assist PetroGas in paying off its outstanding debts and acquiring additional oil and gas properties and projects.  (Compl. ¶¶ 6-7, 9, 11.)  On August 5, 2011, OCS and an unnamed "Client" entered into a Retainer Agreement, pursuant to which OCS was to provide the Client with an Irrevocable Bond Purchase Commitment.  (*Id.* ¶ 11; Mot. Dismiss, Ex. A.)[1]

Consistent with the Retainer Agreement, on August 4, 2011, OCS provided PetroGas with an Irrevocable Bond Financing Commitment in the amount of $250 million for the acquisition, development, and construction of oil and gas projects.  (Compl. ¶ 13; Doc. No. 18-1 [hereinafter "Mot. Dismiss, Ex. B"].)[2]  OCS committed to securing financing in the amount of $250 million through government-issued revenue bonds (IRBs).  (Compl. ¶ 13; Mot. Dismiss, Ex. A.)  The Commitment stated that OCS "will make every effort to finalize and close on the transaction

---

[1] The court finds that it may consider the Retainer Agreement, as well as the Irrevocable Bond Financing Commitments discussed *infra*, without converting OCS's motion into a motion for summary judgment because these documents are central to Crown's claims. *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002) (At the motion to dismiss stage, "the district may consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity.").  Although Crown argues that the "authenticity of some of the documents is subject to serious dispute" (Resp. at 21), it does not provide any support for this conclusory assertion.

[2] The original Exhibit B attached to OCS's Motion to Dismiss contained several unrelated pages in addition to the Irrevocable Bond Financing Commitment issued to PetroGas. (*See* Doc. No. 11-2.) On November 8, 2013, with Crown's consent, OCS filed a Correction and Substitution of Exhibit B Attached to Motion to Dismiss. (Doc. No. 18.) Accordingly, the court considers the substituted version of Exhibit B, rather than version originally attached to OCS's Motion to Dismiss.

within forty-five (45) days and in any event no longer than ninety (90) days from the date that [OCS] receive[s] the initial retainer fee." (Mot. Dismiss, Ex. A.) OCS received the initial retainer fee in early August 2011. (Compl. ¶ 15.)

In addition to the Irrevocable Bond Financing Commitment, OCS assured PetroGas that it would procure third party placement of bond anticipation notes (BANs) or other "bridge financing" sufficient to cover PetroGas's various debts prior to the long-term financing provided for in the Irrevocable Bond Financing Commitment. (*Id.* ¶ 14.) The first BAN was to be in the amount of $5 million and a second BAN was to be in the amount of $40 million. (*Id.*)

During the week of August 8, 2011, OCS advised PetroGas's principals and their affiliates to form a parent entity to manage the financing transactions and to oversee the oil and gas properties and projects that PetroGas sought to acquire. (*Id.* ¶ 16.) Pursuant to this advice, Crown was incorporated in Colorado on August 17, 2011. (*Id.* ¶ 18.)

On August 29, 2011, Crown submitted to OCS a memorandum stating "[p]er our agreement, it is our understanding that we will have the BAN of $5 million along with the $40 million BAN by September 15, 2011. Within or by the six-nine month time line, we would execute and implement the 30 year Bond that has been committed for $250 million." (*Id.* ¶ 19.) That same day, OCS, through its principal, Gilbert Olguin, responded "we should (and will) prepare our bond application request approval for an inducement of 'up to' $450 million in Bonds. This will give us a better outlook on the initial BANs which will amount to $45M. We will work diligently to meet our timelines." (*Id.* ¶ 20.) Between September 2011 and October 20, 2011, OCS

3

made arrangements for and reaffirmed its commitment to provide the agreed-upon financing.  (*Id.* ¶¶ 25-30.)

On October 20, 2011, OCS provided an Irrevocable Bond Financing Commitment to Crown in the amount of $258 million.  (*Id.* ¶ 31; Mot. Dismiss, Ex. C.)  This financing was to be provided from the proceeds of a private placement of IRBs.  (Compl. ¶ 32; Mot. Dismiss, Ex. C.) This permanent bond financing was to be used in part to retire short term debt, *i.e.* the BANs/bridge funds provided to PetroGas.  (Compl. ¶ 32.)

Also on October 20, 2011, OCS provided Crown with another Irrevocable Bond Financing Commitment in the amount of $20 million.  (Compl. ¶ 33; Mot. Dismiss, Ex. D.)  The funds from this Commitment were also to be used to retire short term debt (i.e. the BANs/bridge funds), as well as an oil and gas project called the "Tempo" project.  (Compl. ¶ 33.)

From October 28, 2011 through March 2012, OCS faced a series of obstacles in providing the short-term and long-term financing it committed to provide PetroGas and Crown, but continued to reassure Crown's principals that the funds would be provided.  (*Id.* ¶¶ 34-43.) However, due to the lack of financing, a group of PetroGas creditors filed suit against PetroGas and obtained summary judgment.  (*Id.* ¶ 44.)  On May 29, 2012, OCS sent a letter to an attorney retained by PetroGas stating that OCS was arranging the necessary financing to cover this suit and other legal obligations of PetroGas and that it "expect[ed] the first release to take place the week of June 4."  (*Id.*)  However, no funds were released on or before June 4, 2012.  (*Id.* ¶ 45.)

OCS then assured Crown that it would receive a funding distribution schedule and other closing information concerning its financing commitment to PetroGas and Crown by June 25, 2012. (*Id.* ¶ 46.) Crown did not receive any such information on or before that date. (*Id.*)

Between summer 2012 and summer 2013, OCS repeatedly assured Crown that the financing was forthcoming. (*Id.* ¶¶ 46-58.) However, Crown was never provided with any financing, information, or other documentation. (*See id.*) As of the date of Crown's Complaint, OCS had not performed on its short-term (i.e. BAN/bridge) or long-term financing commitments, and has allegedly refused or otherwise failed to provide any additional documentation or information to Crown that would demonstrate that any of the financial commitments would or will be performed. (*Id.* ¶ 59.)

Crown alleges that it has sustained damages from OCS's failure to perform. Specifically, Crown asserts it has not been able to meet its financial obligations as they have come due, has been unable to finance several oil and gas property acquisitions, and has been unable to finance planned development activities, such as "infill drilling programs, workovers, and recompletions." (*Id.* ¶ 60.)

## PROCEDURAL HISTORY

Based on the facts above, Crown's Complaint, filed August 5, 2013, asserts two state law claims for relief: a claim for breach of contract and a claim for promissory estoppel. (*Id.* ¶¶ 61-71.) Crown asserts that this court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because (1) Crown is incorporated in, and therefore a citizen of, Colorado and OCS

is a LLC whose sole member, Olguin, is a citizen of New Mexico; and (2) the amount in

controversy exceeds $75,000 exclusive of interest and costs.  (*Id.* ¶¶ 1-3.)  OCS's Motion to

Dismiss seeks to dismiss Crown's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim.  (*See generally* Mot. Dismiss.)[3]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties

might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v.*

---

[3]    On April 2, 2014, after OCS's former counsel withdrew and new counsel entered an appearance, OCS filed a Corrected Motion to Dismiss.  (Doc. No. 30.)  On April 4, 2014, this court denied the Corrected Motion to Dismiss without prejudice.  (Minute Order, Doc. No. 32.)  The court found that, under the circumstances, where OCS's Motion to Dismiss was fully briefed and had been pending for nearly six months, it would not allow OCS to unilaterally file a Corrected Motion to Dismiss without leave of court.  (*Id.*)

    Consistent with that order, OCS filed a Motion for Leave to Substitute its Corrected Motion to Dismiss for its original Motion to Dismiss.  (Doc. No. 33, filed Apr. 11, 2014.)  After briefing, the court invoked its inherent authority to oversee litigation and denied OCS's Motion for Leave.  (Order, Doc. No. 39, filed June 12, 2014.)  The court found that the new arguments asserted by OCS in its proposed Corrected Motion to Dismiss were less than persuasive and that, otherwise, OCS's interest in filing its Corrected Motion to Dismiss was outweigh by the prejudice Crown would face in responding to a second, corrected motion to dismiss more than six months after OCS's Motion to Dismiss was filed.  (*Id.* at 2-3.)

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51.  Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Kennedy v. Peele*, 552 F. App'x 787, Case No. 11-cv-00967-REB-KMT, 2014 WL 92251, *4 (10th Cir. January 10, 2014). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ANALYSIS

OCS argues that Crown's breach of contract and promissory estoppel claims both fail to state a claim for relief. The court addresses each claim in turn below.

### A.    *Breach of Contract Claim*

#### 1.    *Existence of an Enforceable Contract*

OCS argues that there is no enforceable contract between OCS and Crown. (Mot. Dismiss at 3-5.) More specifically, OCS argues that (1) the August 5, 2011 Retainer Agreement is not

enforceable between Crown and OCS because Crown is not a party to that contract, and (2) the October 20, 2011 Irrevocable Bond Financing Commitments sent to Crown are not enforceable because they were not supported by consideration.  (*Id.*)  The court considers the Retainer Agreement first and then turns to the Irrevocable Bond Financing Commitments.

### a.    *Retainer Agreement*

The court agrees that the Retainer Agreement is not a contract between OCS and Crown. California law[4] requires four elements to form a valid contract:  (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient consideration.  Cal Civ. Code § 1550.

Here, there is an absence of mutual consent.  Contract formation requires mutual consent, which cannot exist unless the parties "agree upon the same thing in the same sense" and such consent is communicated by each to the other.  Cal. Civ. Code § 1565.  Further, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal Civ. Code § 1636.

Crown admits that it is not referenced in the Retainer Agreement; instead the Retainer Agreement refers only to an unnamed "Client."  (Compl. ¶ 11.)  Moreover, it does not appear that the Retainer Agreement was ever signed by the unnamed client.  (*See* Mot. Dismiss, Ex. A.)

---

[4] As Crown points out, the Retainer Agreement states that it "shall be construed in accordance with and governed by the laws of the State of California."  (Mot. Dismiss, Ex. A ¶ 19.)  Accordingly, the court looks to California law to construe the Retainer Agreement.  *See Lehman Brothers Holdings, Inc. v. Universal Am. Mortg. Co.,* --- F. Supp. 2d ----, 2014 WL 292858, at *2 (D. Colo. Jan. 27, 2014) (citing *Yavuz v. 61 MM, Ltd.,* 465 F.3d 418, 427-28 (10th Cir. 2006)) (unpublished citation omitted) (absent special circumstances, courts will honor contractual choice-of-law provisions).

More importantly, Crown concedes that it was not incorporated, and therefore did not exist, until *after* the Retainer Agreement was executed. (*See id.* ¶¶ 11-18.) As such, it is simply not possible that Crown consented to the Retainer Agreement at the time of contracting.[5]

Crown argues that, even if it was not one of the contracting parties to the Retainer Agreement, it may enforce the Retainer Agreement as a third-party beneficiary. The court disagrees.

Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "A third party beneficiary must show that the contract was made expressly for his or her benefit." *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 674 (C.D. Cal. 2000) (citing *Sofias v. Bank of America,* 218 Cal. Rptr. 388, 390 (Cal. Ct. App. 1985)). "'Expressly' means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.'" *Sofias,* 218 Cal. Rptr. at 390 (citation and internal quotations omitted). "The test for deciding whether a promise to pay

---

[5] Crown argues that OCS's actions subsequent to executing the Retainer Agreement, namely sending the two Irrevocable Bond Financing Commitments to Crown in October 2011, "confirm" OCS's contractual commitment to Crown. (Resp. at 7.) However, the court is not aware of any authority holding that, in the absence of a novation or other assignment of rights and obligations under a contract, a party's subsequent actions can somehow modify the parties to a contract. Although Crown argues that a novation did occur here, it does so through affidavits attached to its Response that cannot be considered under Rule 12(b)(6). *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995) (citing *Doyle v. Okla. Bar Ass'n,* 998 F.2d 1559, 1566)) ("It is well-established . . . that in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."). While there are some exceptions to this general rule, *see, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85 (10th Cir. 1997), they do not apply to the affidavits submitted by Crown.

inures to the benefit of a third party is whether an intent so to benefit the third party appears from the terms of the contract." *Lazar,* 195 F.R.D. at 674 (citing *Mottashed v. Cent. & Pac. Improvement Corp.,* 47 P.2d 525, 527 (Cal App. 1935)).

Here, none of the terms of the Retainer Agreement suggest the existence of any third-party beneficiary generally, let alone Crown specifically.  Moreover, it is dubious, at best, that the parties to the Retainer Agreement intended for Crown to be a third-party beneficiary when Crown was not incorporated, and therefore did not exist, at the time the Retainer Agreement was executed. *Landale-Cameron Court, Inc. v. Ahonen,* 66 Cal. Rptr. 776, 782 (Cal. Ct. App. 2007) (third party beneficiary claim found to be without merit where the purported third party beneficiary did not exist at the time of the contract and failed to submit any evidence that it was an intended third party beneficiary.)  Accordingly, the court finds that Crown is not a third-party beneficiary under the Retainer Agreement.

### B.      The Irrevocable Bond Financing Commitments

OCS argues that the October 20, 2011 Irrevocable Financing Commitments sent to Crown are not separately enforceable because they are not supported by consideration.  The court agrees.

Crown argues that the fees provided for in the Retainer Agreement—namely a retainer fee in several installments and a performance-based Facilitator Fee if the financing was provided—constituted consideration for the Irrevocable Financing Commitments.  (Resp. at 11.) The court disagrees.  The retainer and facilitator fees clearly constituted consideration for the *Retainer Agreement.  (See* Mot. Dismiss, Ex. A ¶ 3 ("This Agreement shall become effective upon

11

the receipt of the initial finder fee described in para 4 below . . . ."), ¶ 4 (providing that "Client shall pay to OCS": (a) an initial retainer fee; (b) a second retainer fee; (c) a final retainer fee; and (d) a Performance-based Bond Facilitator Fee if funds are released.).)  "If a party is already contractually obliged to perform a certain action, that action cannot be consideration for a separate contract." *Santomenno v. Transamerica Life Ins. Co.,* Case No. CV 12-02782 DDP (MANx), 2013 WL 603901, at *14 (C.D. Cal. Feb. 19, 2013) (unreported); *Kennedy v. William R. Hudon, Inc.,* 659 F. Supp. 900, 904-05 (D. Colo. 1987) (citing Restatement (Second) of Contracts § 73 (1981)) ("A preexisting duty is not consideration").  Thus, the fees provided for in the Retainer Agreement cannot constitute consideration for the separate Irrevocable Retainer Financing Commitments between Crown and OCS.  Therefore, because they are not supported by consideration, the court finds that the Irrevocable Retainer Financing Commitments are not enforceable contracts.

Altogether, the court finds that Crown fails to state a claim for breach of contract because, even assuming the truth of the facts alleged, Crown's allegations fail to demonstrate that either the Retainer Agreement or the Irrevocable Bond Financing Commitments are enforceable between Crown and OCS.  Therefore, OCS's Motion to Dismiss is properly granted with respect to Crown's first claim for breach of contract.[6]

---

[6] In its Response, Crown submits that, to the extent its Complaint may contain technical deficiencies, it should be permitted to file an amended complaint.  (Resp. at 21-22.)  This request is not proper in a response.  D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate document.").

**B.**     *Promissory Estoppel Claim*

OCS argues that Crown's promissory estoppel claim also fails to state a claim for relief. Here, the court disagrees.

To state a claim for promissory estoppel, a plaintiff must allege: (1) the defendant made a promise to the plaintiff; (2) the defendant should have reasonably expected that the promise would induce action or forbearance by the plaintiff; (3) the plaintiff reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice.  *See Struble v. American Family Ins. Co.*, 172 P.3d 950, 957 (Colo. App. 2007).[7]

OCS argues that Crown's promissory estoppel claim fails because its commitments to provide financing to Crown were conditioned upon OCS's ability to obtain a private placement of government revenue bonds.  (Mot. Dismiss at 10.)  Although the court agrees that a plaintiff cannot reasonably rely on a conditional promise before the condition is satisfied, *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995), the court does not agree that the Irrevocable Bond Financing Commitments were conditional in any way.  The Irrevocable Bond Financing Commitments do not include any express language conditioning OCS's commitment to provide bond financing on

_____

[7] Neither side addresses what state's laws govern the Irrevocable Bond Financing Commitments and the commitments themselves do not contain a choice of law provision.  (Mot. Dismiss, Ex. C-D.)  Finding no compelling reason to apply the law of another jurisdiction, the Court will apply Colorado law with respect to the Irrevocable Bond Financing Commitments.  *See R.L. Clark Drilling Contractors, Inc. v. Schramm*, 835 F.2d 1306, 1307-08 (10th Cir. 1987) (district court may apply the law of the jurisdiction in which it sits unless a party preferring the application of foreign law raises the issue); *Toy v. Am. Family Mut. Ins. Co.*, Case No. 12-cv-01683-PAB-MJW, 2014 WL 321213, at *3 n.3 (D. Colo. Jan. 29, 2014).

its ability to place government revenue bonds.  *Cf. Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC,* 128 P.3d 245, 247 (Colo. App. 2004) ("conditions precedent are not favored and will not be given effect unless established by clear and unequivocal language.").  To the contrary, the commitments expressly state that OCS "does hereby irrevocably *commit* to provide [Crown] ("The Borrower") with permanent financing" and states that the financing "*will* be provided with the proceeds from the private placement of government issued industrial development bonds to be issued by a body politic and corporate that is authorized by law to issue such bonds."  (Mot. Dismiss, Ex. C at 1; Ex. D at 1) (emphasis added.)

Next, OCS maintains that it could not have expected that Crown would reasonably rely on its promises because it was not clear whether OCS was providing financing to PetroGas or Crown. This argument might be compelling as to the Retainer Agreement or the Irrevocable Bond Financing Commitment issued to PetroGas on August 4, 2011, shortly after the Retainer Agreement was executed.  However, OCS sent both of the October 20, 2011 Irrevocable Bond Financing Commitments directly to Crown and the commitments both refer to "you," *i.e.* Crown Energy, as "The Borrower."  (Mot. Dismiss, Ex. C at 1; Ex. D at 1.)

OCS also argues that Crown's reliance on OCS's promise of financing was not reasonable because OCS continually indicated that it had not yet purchased any bonds and therefore the funds upon which Crown relied in incurring debts were not available.  However, each of the alleged events relied on by OCS to demonstrate that financing might not be forthcoming occurred *after* OCS issued the October 20, 2011 Irrevocable Financing Commitments.  (Mot. Dismiss at 14

14

(citing Compl. ¶¶ 39, 45-46, 49, 59.)  The court finds that the reasonable reliance element must be judged from the time of the promise.  Otherwise, a defendant could almost always avoid an otherwise enforceable promise simply by pointing out subsequent circumstances that prevented it from fulfilling the promise.[8]

Finally, OCS argues that enforcement of its promises is not necessary to prevent injustice because Crown does not allege it gave any money to OCS in reliance on the promise and therefore OCS was not unjustly enriched.[9]  OCS erroneously conflates Crown's claim for promissory estoppel with a claim for unjust enrichment.  *See Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967) (elements of a claim for unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit).  The mere fact that Crown did not provide OCS with any money is not fatal to Crown's promissory estoppel claim.  Indeed, the purpose of a

---

[8] OCS also appears to argue that Crown's damages are speculative because, in the Irrevocable Bond Financing Commitments, OCS only committed to provide Crown with financing in an amount "*not to exceed*" $258 million and $20 million respectively.  (Mot. Dismiss at 7.)  However, although they are not contracts, the court finds that the Irrevocable Bond Financing Commitments can be analogized to "requirements contracts" that required OCS to provide financing to meet Crown's needs up to the specified amounts.  While the value of a requirements contract can be difficult to ascertain, that does not mean that damages cannot be calculated with a reasonable degree of certainty.  *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1361-62 (10th Cir. 1989).

[9] OCS also argues that the court should not enforce the October 20, 2011 Irrevocable Bond Financing Commitments because equity should not reward Crown for its own mismanagement. (Mot. Dismiss at 14.)  Simply put, the court does not follow, and therefore does not address, this argument.  Indeed, the proposition Defendant take from *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.,* 16 F. Supp. 2d 375, 381 (S.D.N.Y. 1998), does not appear to have any relevance to the facts at issue here.

promissory estoppel claim is to enforce a promise that is not otherwise enforceable as a contract, due to a lack of consideration or a failure of the parties to reach a mutual agreement. *See Vigoda v. Denver Urban Renewal Auth.,* 646 P.2d 900, 905 (Colo. App. 1982).

Altogether, accepting Crown's allegations as true, the court finds that Crown has sufficiently stated a claim for promissory estoppel. As such, OCS's Motion to Dismiss is properly denied with respect to Crown's second claim for relief.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendant's OCS American Capital, Ltd.'s "Motion to Dismiss." (Doc. No. 11) be GRANTED in part and DENIED in part. Specifically, I RECOMMEND that Defendant's Motion be GRANTED with respect to Plaintiff Crown Energy, Inc.'s first claim for relief for breach of contract and DENIED with respect to Crown's second claim for relief for promissory estoppel.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for

appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

   Dated this 11th day of August, 2014.

              BY THE COURT:

              _____

              Kathleen M. Tafoya
              United States Magistrate Judge